UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONTEVIUS HUTCHERSON, <br><br> Plaintiff, <br><br> v. <br><br> CHICO, <br><br> Defendant. | CAUSE NO. 3:23-CV-445-PPS-AZ |

## OPINION AND ORDER

Dontevius Hutcherson, a prisoner without a lawyer, is proceeding in this case against Dr. Christina Chico "in her individual capacity for compensatory and punitive damages for denying him mental health treatment in violation of the Eighth Amendment[.]" [DE 12 at 3]. On August 11, 2025, Dr. Chico filed a motion for summary judgment arguing she provided Hutcherson constitutionally adequate medical care. [DE 50]. With the motion, Dr. Chico provided Hutcherson the notice required by N.D. Ind. L.R. 56-1(f). [DE 53]. Attached to the notice was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a response to statement of material facts, which includes a citation to evidence supporting each dispute of fact. On October 3, 2025, the court extended Hutcherson's deadline to respond to the summary judgment motion to November 20, 2025. [DE 55]. This extended deadline passed over a month ago, but Hutcherson still

has not responded to Dr. Chico's summary judgment motion. Therefore, I will now rule on Dr. Chico's summary judgment motion.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th

2

703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698 (cleaned up). Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

3

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference, the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Dr. Chico provides her own affidavit and a copy of Hutcherson's medical records, which show the following facts:[1] During all relevant times, Dr. Chico was the lead psychologist at Indiana State Prison ("ISP"), where she saw Hutcherson as a patient. [DE 51-1 at 1]. In September 2020, Hutcherson was moved into ISP's restrictive housing unit, where he was regularly monitored by behavioral health staff. [*Id.* at 2]. At that time, Hutcherson was assessed by a mental health professional ("MHP") who concluded he did not have any active mental health diagnosis and did not present with any symptoms of a mental health illness. [*Id.*; DE 51-3 at 5-6]. The MHP informed Hutcherson he could submit a healthcare request form if he needed mental health

---

[1] Because Hutcherson has not responded to Dr. Chico's summary judgment motion, I accept Dr. Chico's attestations and the contents of Hutcherson's medical records as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

4

services. [*Id.*] Hutcherson's restrictive housing plan was initiated, which included mental health screening on a monthly basis. [*Id.*]

On December 4, 2020, Dr. Chico first saw Hutcherson due to a family member calling the facility with concerns. [DE 51-1 at 3-4; DE 51-3 at 16-17]. Hutcherson denied any mental health concerns and complained only of medical issues. [*Id.*] Dr. Chico noted Hutcherson had no documented mental health diagnoses and that she found him to be calm, cooperative, and functioning within normal limits. [*Id.*] Her assessment found no indications of psychosis, hallucinations, delusions, or other mental health symptoms. [*Id.*] Hutcherson complained he had stomach issues caused by "pin worms," but Dr. Chico did not believe this to be a delusion or related to any mental health disorder. [*Id.*]

On January 14, 2021, Dr. Chico visited Hutcherson again after a medical referral. [DE 51-1 at 5-7; DE 51-3 at 21-23]. Dr. Chico noted this time that Hutcherson was very talkative, demanding, and manipulative. [*Id.*] He reported he had a chip in his head, made requests to go to an outside hospital, stated voices in his head were telling him to hurt people, and stated pinworms in his teeth were shocking him and influencing him. [*Id.*] Dr. Chico noted Hutcherson had been suspected in the past of feigning hallucinations and delusions. [*Id.*] Dr. Chico asked Hutcherson how she could help him, and he stated he wanted to be moved back to general population, but Dr. Chico advised him she could not move him from restrictive housing. [*Id.*] Hutcherson stated he needed to leave restrictive housing because he was hearing voices and stated he would kill someone if he did not leave. [*Id.*] Dr. Chico believed Hutcherson had no indications

5

of organic or substance-induced psychosis, as his thought process was organized and goal directed, he was focused on moving out of restrictive housing, he did not present with any disturbances in behavior, and his presentation and report were inconsistent with what would be expected from an individual experiencing genuine psychosis. [*Id.*] Dr. Chico documented her assessment that there were no psychotic symptoms and Hutcherson was not presenting with any mental health issues at that time. [*Id.*]

On April 6, 2021, Hutcherson was seen by an MHP and again reported hearing voices, stated he felt possessed, and requested that he be allowed to make phone calls and be sent to an outside hospital. [DE 51-1 at 7-8; DE 51-3 at 24-26]. The MHP noted Hutcherson did not appear to be responding to internal stimuli, his speech was clear, and his thought process was organized and within normal limits. [*Id.*] The MHP assessed that Hutcherson was attempting to feign mental health symptoms as a means to control placement in the facility and concluded no mental health follow-ups were necessary at that time and he would continue to be monitored per protocol. [*Id.*]

On May 19, 2021, Hutcherson was seen by Psychologist Heather Verdon and again reported hearing voices and that he believed he was getting worms in his food. [DE 51-1 at 8-9; DE 51-3 at 27-29]. Dr. Verdon observed no abnormal interactions, found Hutcherson was not responding to internal stimuli or acting bizarrely, and was focused and logical. [*Id.*] She noted she agreed with previous assessments that Hutcherson appeared to be reporting mental health symptoms for secondary gain and there was no indication he was truly experiencing his reported symptoms and concluded that no further mental health follow up was indicated. [*Id.*]

On August 6, 2021, Hutcherson was seen for an assessment and denied any current mental health concerns. [DE 51-1 at 9; DE 51-3 at 30-31]. On September 20, 2021, a mental status evaluation found Hutcherson had appropriate behavior, affect, mood, and thought process, and no delusions or hallucinations were reported. [DE 51-1 at 9; DE 51-3 at 32-33]. On March 18, 2022, Hutcherson was seen by an MHP and denied any mental health issues. [DE 51-1 at 10; DE 51-3 at 40-41].

On June 2, 2022, Dr. Chico met with Hutcherson after he filed a grievance claiming to be experiencing audio and visual hallucinations. [DE 51-1 at 10-12; DE 51-3 at 43-45]. Hutcherson declined to leave to his cell and talked with Dr. Chico at his cell front. [*Id.*] He reported he was seeing spirits that could harm him. [*Id.*] Hutcherson suggested he had ADHD, felt stressed, and should not be in a cell. [*Id.*] Dr. Chico offered to contact the chaplain and offered other resources, which Hutcherson declined. [*Id.*] Hutcherson requested a brain scan, which Dr. Chico had no ability to order. [*Id.*] Hutcherson then began to berate Dr. Chico, stated he was smarter than her, and told her to get away from his cell because she did not know how to do her job. [*Id.*] Dr. Chico believed Hutcherson showed signs of antisocial personality disorder but saw no indications of genuine mental health symptoms, and documented her opinion that Hutcherson claimed he was experiencing hallucinations in an attempt to get out of restrictive housing. [*Id.*]

On October 6, 2022, Hutcherson was again seen by an MHP after he reported hearing voices and seeing spirits. [DE 51-1 at 12-13; DE 51-3 at 49-51]. The MHP found Hutcherson had a clear and logical thought pattern, and noted Hutcherson claimed he

could better control the spirits in general population because he could leave his cell and talk to other inmates. [*Id.*] The MHP contacted Dr. Chico, who believed Hutcherson's claims were not consistent with true psychosis and that his intent was to feign mental health issues so he could be released back to general population. [*Id.*]

On October 23, 2022, Hutcherson claimed to be suicidal and was placed on suicide watch. [DE 51-1 at 13-15; DE 51-3 at 52-62]. An MHP met with Hutcherson, found he had no current suicidal ideations, and documented that he admitted to claiming suicidal ideation for secondary gain to control his housing. [*Id.*] The suicide watch was discontinued. [*Id.*]

On February 6, 2023, Dr. Chico met with Hutcherson after he stopped her on the range. [DE 51-1 at 15-16; DE 51-3 at 63-65]. Hutcherson wanted a "mental health code" because he was hearing voices, but Dr. Chico did not believe he needed a mental health code. [*Id.*] Dr. Chico suggested Hutcherson start participating in courses to work on something positive, and Hutcherson expressed interest in that offer. [*Id.*]

On February 23, 2023, Dr. Chico again met with Hutcherson at his cell and he made claims about bizarre things happening to him. [DE 51-1 at 16-19; DE 51-3 at 66-69]. Hutcherson again requested he be sent to an outside hospital and given a brain scan, but Dr. Chico responded that she did not have the ability to send him to an outside hospital. [*Id.*] Hutcherson stated he was writing things down for a lawsuit because he was not getting proper treatment, as only getting out of restrictive housing or going to an outside hospital could help him. [*Id.*] Dr. Chico noted Hutchson did not

8

show any indications of genuine psychosis or other mental health symptoms and continued to believe he was feigning mental health symptoms for secondary gain. [*Id.*]

On March 21, 2023, Dr. Chico met with Hutcherson one final time and documented his concerns, but she continued to believe he had no genuine mental health issues and was only feigning mental health symptoms for secondary gain. [DE 51-1 at 19-20; DE 51-3 at 70-72]. Dr. Chico left her position at ISP in May 2024. [DE 51-1 at 21].

Dr. Chico argues summary judgment is warranted in her favor because she was not deliberately indifferent to Hutcherson's mental health needs, as she provided him with reasonable treatment and exercised her professional judgment in determining he was feigning mental illness to gain a transfer or status change. [DE 51 at 15-19]. As noted, Hutcherson did not respond to Dr. Chico's summary judgment motion.

Here, no reasonable jury could conclude the treatment Dr. Chico provided to Hutcherson was constitutionally inadequate. Specifically, it is undisputed Dr. Chico and other mental health staff regularly monitored and met with Hutcherson, documented his complaints, and routinely concluded he did not have any genuine mental health symptoms because he did not appear to be responding to internal stimuli, his speech was clear, his thought process was organized and within normal limits, and his presentation and reports were inconsistent with what would be expected from an individual experiencing genuine psychosis. It is also undisputed that Hutcherson made numerous requests that Dr. Chico and other mental health staff treat his symptoms by sending him to an outside hospital or moving him back into general population. Dr. Chico's conclusion that Hutcherson did not have any genuine mental health issues but

9

rather was feigning mental health symptoms to get out of restrictive housing was a valid exercise of her professional judgment entitled to deference, and there's no evidence by which any reasonable jury could conclude Dr. Chico's decision was "plainly inappropriate." *See Hayes*, 546 F.3d at 524; *Jackson*, 541 F.3d at 698 ("A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances."). Accordingly, because its undisputed Dr. Chico regularly monitored Hutcherson and documented his concerns and exercised her professional judgment to conclude he did not require any additional treatment, no reasonable jury could conclude the treatment provided by Dr. Chico was constitutionally inadequate. Summary judgment is therefore warranted in favor of Dr. Chico.

For these reasons, the Court:

(1) **GRANTS** Dr. Chico's motion for summary judgment [DE 50]; and

(2) **DIRECTS** the Clerk to enter judgment in favor of Dr. Chico and against Dontevius Hutcherson and to **CLOSE THIS CASE**.

**SO ORDERED** on January 9, 2026.

/s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT